Michael J. Gearin, WSBA # 20982
David C. Neu, WSBA # 33143
Brian T. Peterson, WSBA # 42088
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
(206) 623-7580

Honorable Brian D. Lynch
Chapter 13
Hearing Location: Courtroom 1, 1717 Pacific Ave, Ste 2100, Tacoma, WA
Hearing Date: Friday, June 12, 2019
Hearing Time: 1:30 p.m.
Response Date: June 5, 2019

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re:

DIANE RENEE ERDMANN

Debtor.

Case No. 19-41238-BDL

MOTION TO CONVERT CASE TO CHAPTER 7

## I. INTRODUCTION

Mark Calvert (the "Trustee"), Chapter 11 Trustee for Northwest Territorial Mint, LLC ("NWTM") in Case No 16-11767-CMA, United States Bankruptcy Court for the Western District of Washington (the "NWTM Bankruptcy Case"), in his capacity as a creditor of the Erdmann estate, submits this Motion pursuant to 11 U.S.C. §1307(c) requesting conversion of the above-captioned proceeding to a proceeding under Chapter 7 of the United States Bankruptcy Code.

## II. BACKGROUND

A. <u>NWTM and Diane Erdmann</u>.

1. On April 1, 2016, NWTM commenced the NWTM Bankruptcy Case by filing a voluntary petition under chapter 11 of the United States Bankruptcy Code. On April 11, 2016, the Court appointed Mark Calvert as Chapter 11 Trustee over NWTM. *See* Dkt. No. 51, Case No 16-11767-CMA.

MOTION TO CONVERT CASE TO CHAPTER 7.- 1
502230972 v5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 19-41238-BDL    Doc 17    Filed 05/09/19    Ent. 05/09/19 13:06:23    Pg. 1 of 8

2. At the time of its bankruptcy filing, NWTM billed itself as the largest private mint in the United States. As of April 1, 2016 it had approximately 240 employees located at facilities in six states. NWTM's business operations included custom minting of medals and commemorative coins as well as on-line and walk-in sales of precious metals and coins.

3. Diane Erdmann, the Debtor herein, is the long-term girlfriend of Ross Hansen, the owner of NWTM. *See* Appellant Diane Erdmann's Opening Brief, Case No. C16-1392RSL, United States District Court for the Western District of Washington (the "Erdmann Brief") at p.2-3. Since at least 2005, through the date of NWTM's bankruptcy filing in April, 2016, Diane Erdmann was in charge of NWTM's Federal Way vault (the "NWTM Vault"), where her duties included managing cash and bullion. *Id.* at 3.

4. During the period in which Diane Erdmann was in charge of the NWTM Vault, she failed to maintain records that would allow one to track precious metal and other bullion held by NWTM. *See* Memorandum Opinion and Further Order on Motion for Authority to Withdraw as Attorney for Debtor (Case No 16-11767-CMA) at 7. Given this lack of record keeping, it would have been easy for someone with access to the NWTM Vault to take precious metal. *Id.*

5. As part of its business, NWTM offered storage services to customers, whereby customers would pay a fee in exchange for NWTM agreeing to store their precious metal in its vault. NWTM also entered into so-called "lease" agreements with certain customers, whereby NWTM was authorized to use customer's stored precious metal in its minting operations. In return, NWTM was to replace the metal that it used with "like kind" metal, with interest. NWTM was required under the terms of the lease agreements to keep sufficient precious metal inventory on-hand to fulfill its obligations.

6. Following his appointment, the Trustee discovered that almost $14 million in precious metal, which should have been held by NWTM, was missing. He concluded that there was more than $13.8 million in missing precious metal inventory including approximately $5 million of missing storage inventory, approximately $5.4 million of missing leased metal inventory,

MOTION TO CONVERT CASE TO CHAPTER 7.- 2
502230972 v5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

approximately $1.1 million of inventory which was the consigned property of a custom metal customer, approximately $540,000 of precious metal inventory provided by customers to complete custom orders, and approximately $1.8 million in missing gold which had been sent by a customer to NWTM's Federal Way, Washington facility in October, 2015 to be exchanged for Canadian gold maple leaf coins.

B.    The Trustee's Lawsuit Against Diane Erdmann.

7.    On September 9, 2016, the Trustee filed a complaint, commencing Adv. Pro. 16-01217, United States Bankrutpcy Court for the Western District of Washington (the "Erdmann Lawsuit"). In the Erdmann lawsuit, the Trustee asserted various causes of action, including avoidance claims under the Washington Uniform Fraudulent Transfer Act and the Bankrutpcy Code, based upon the fact that NWTM paid Diane Erdmann's personal credit card bills from 2007 through NWTM's bankruptcy filing.

8.    Following a trial in January, 2018, a judgment was entered against Diane Erdmann, in favor of the Trustee, in the amount of $430,462, plus post-judgment interest at the federal judgment rate (the "Erdmann Judgment"). The Erdmann Judgment is no longer subject to appeal.

C.    The Trustee's Efforts to Satisfy the Erdmann Judgment.

9.    In August, 2012, Bradley Stephen Cohen and Cohen Asset Management Inc. (collectively, "Cohen") commenced a lawsuit in the United States District Court for the District of Nevada, under case no. 12-01401 (the "Cohen Lawsuit"), naming Ross Hansen and NWTM as defendants, asserting claims for defamation and invasion of privacy. On February 17, 2016, the jury empaneled in the Cohen Lawsuit returned a verdict finding Ross Hansen, NWTM, and the other defendants liable for damages. On March 1, 2016, judgment was entered against Ross Hansen in the amount of $25,500,000.

10.    Cohen obtained a writ of execution in support of his enforcement of the judgment against Ross Hansen and on April 27, 2016 caused the King County Sheriff to seize personal property at Hansen's residence in Auburn, Washington including coins and bullion, computers,

MOTION TO CONVERT CASE TO CHAPTER 7.- 3
502230972 v5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 19-41238-BDL    Doc 17    Filed 05/09/19    Ent. 05/09/19 13:06:23    Pg. 3 of 8

collectibles and paper records (the "Seized Property"). The Trustee, on behalf of the NWTM estate, Erdmann and Ross Hansen have all asserted ownership over some or all of the Seized Property.

11. Diane Erdmann filed a motion in the NWTM Bankruptcy Case for instruction regarding the applicability of the automatic stay as to the Cohen Lawsuit in which she asserted that most of the Seized Property belongs to her.[1] [Dkt. No. 337, Case No. 16-11767-CMA]. On June 22, 2016, the Bankruptcy Court entered an Order Determining Applicability of Automatic Stay, ordering that the Seized Property be turned over to the Trustee pending a determination as to ownership.

12. On March 12, 2019, the Trustee filed a Motion to Authorize Execution Upon Interest of Diane Erdmann in Seized Property in the Erdmann Lawsuit, seeking to execute on the interest of Diane Erdmann in the Seized Property, if any, in enforcement of his judgment against Erdmann. [Dkt. No. 127, Adv. Pro. No. 16-01207-CMA]. On the eve of the date of the hearing on the motion, Diane Erdmann filed a petition for Chapter 13 relief to stay the execution on the Seized Property.

D. The Potential of Undisclosed Assets Available for Creditors.

13. Diane Erdmann testified in deposition in June, 2016 that she had no paying job since at least the late 1990s, and that she was effectively without assets. Specifically she testified that other than the retainer funds paid to the Tracey Law Group and some precious metal seized by the King County Sheriff (the Seized Assets currently held by the Trustee), her assets consisted of six ounces of gold worth $7,200, $1,000 in cash, and some miscellaneous silver held by her friend Don Schwenk. When asked directly if she had any other assets, she emphatically said "No." *See* Declaration of Joseph Hamell in Support of Ex Parte Application for FRBP 2004 Examination of Renton Coin Shop, Exhibit A, [Dkt No. 1016, Case No. 16-11767-CMA].

Ms. Erdmann, in filings made with the Bankruptcy Court and through the argument of her counsel, repeatedly cited her lack of financial resources. For example, at Dkt. No. 408, in response to a motion filed by Stephen Cohen seeking relief from the automatic stay to execute on the Sheriff-

---

[1] Ross Hansen has asserted that a small portion of the Seized Property, worth approximately $3,300, belongs to him. [Dkt. No. 2074, Case No. 16-11767-CMA]. The Trustee contends that the vast majority of the Seized Property is property of the NWTM bankruptcy estate.

MOTION TO CONVERT CASE TO CHAPTER 7.- 4
502230972 v5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 19-41238-BDL    Doc 17    Filed 05/09/19    Ent. 05/09/19 13:06:23    Pg. 4 of 8

seized inventory, she stated "[A] large portion of Ms. Erdmann's personal assets are unavailable to pay attorneys . . . . and it may not be possible for Ms. Erdmann to maintain legal representation …" The Bankruptcy Court noted in an oral decision in October 2016 that "Ms. Erdmann has indicated that she is a person of modest means and that the [retainer paid to Tracey Law Group] represented her life savings." [Dkt. No. 791, Case No. 16-11767-CMA]. In short, it was publically known that Ms. Erdmann had virtually no assets, and that she did not possess platinum, palladium, significant amounts of gold, or other precious metals that she could liquidate to pay legal bills.

14. Even though she allegedly owned no significant assets and only a *de minimis* amount of bullion, beginning in late June, 2016, Diane Erdmann began liquidating precious metals and using the proceeds to pay legal fees incurred by Ross Hansen or a company which he owned, Medallic Art Company, LLC. In total, between June, 2016 and March, 2017, she liquidated approximately $700,000 in precious metal, raising the potential that she has secreted assets from her creditors.

### III. EVIDENCE RELIED UPON

This Motion relies on the Declaration of Mark Calvert, the Declaration of David C. Neu, and the pleadings and papers herein.

### IV. ARGUMENT

Upon the request of a party in interest, the court may dismiss or convert a case under Chapter 13 to a case under Chapter 7 for cause, whichever is in the best interest of creditors. 11 U.S.C. §1307. There is ample cause for conversion of the Erdmann case.

First, it is clear that Diane Erdmann is not eligible to be a debtor in a Chapter 13 proceeding. Section 109 of the Bankruptcy Code sets forth the eligibility standards to be a debtor in Chapter 13. The Trustee's judgment against Ms. Erdmann, alone, is more than the unsecured debt limit of $394,735. Based on the creditor matrix filed by Diane Erdmann, she also owed money to credit card companies, attorneys, and a dentist, meaning that she likely has obligations far in excess of the Trustee's judgment. Second, it does not appear that Dianne Erdmann has "regular income," which, as defined under 11 U.S.C. §101(30) means that she has income that is sufficiently stable and regular

MOTION TO CONVERT CASE TO CHAPTER 7.- 5
502230972 v5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 19-41238-BDL    Doc 17    Filed 05/09/19    Ent. 05/09/19 13:06:23    Pg. 5 of 8

to enable her to make payments under a plan. Ms. Erdmann's motion to pay her filing fee over the course of four months evidences her lack of income.

Second, it is clear that Diane Erdmann did not file this proceeding for a legitimate purpose. Setting aside the fact that she is statutorily ineligible to be a Chapter 13 debtor, there is also the fact that she has not filed schedules or a statement of financial affairs. Nor has she filed a plan within the time limits provided by 11 U.SC. §521 and Local Rule 3015-1(c), a fact that in itself constitutes cause for conversion. 11 U.S.C. §1307(c). These facts and circumstances, taken in totality, indicate that the sole purpose of Ms. Erdmann's filing was to defeat the Trustee's efforts to execute on the Seized Property, not to seek a fresh start.

It is in the best interest of creditors to convert rather than dismiss this proceeding. There are certainly assets in this estate which can be administered for creditors. First, there is the Seized Property in which the Erdmann estate holds a disputed interest (dispute over whether Ms. Erdmann actually owns the Seized Property or whether it was looted from NWTM). Second, as detailed above, during a period in which she was claiming to be destitute, Ms. Erdmann liquidated approximately $700,000 in precious metal. The liquidation of the metal is significant not only because it indicates that Ms. Erdmann may have assets which she has concealed from creditors, but also because to the extent that the transferred metals were owned by Erdmann, the transfer of the proceeds of the metal to third parties likely gives rise to avoidance actions which could be pursued by a Chapter 7 Trustee.

## V.  CONCLUSION

In sum, the Court should convert this case. Diane Erdmann did not file this case in good faith, and it is clear she has no intention of legitimately addressing her obligations to creditors. This case was filed with one purpose – to delay and frustrate the Trustee's efforts to execute on the Seized Property. Diane Erdmann, even though patently ineligible to be a Chapter 13 debtor, chose to avail herself of the bankruptcy system as a litigation tactic and she should not be relieved from the consequences of her choice by dismissal. As the Ninth Circuit has ruled, a bankruptcy court may act

MOTION TO CONVERT CASE TO CHAPTER 7.- 6
502230972 v5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 19-41238-BDL    Doc 17    Filed 05/09/19    Ent. 05/09/19 13:06:23    Pg. 6 of 8

to prevent an abuse of the bankruptcy process by converting a Chapter 13 proceeding rather than dismissing it. *In re Rosson*, 545 F.3d 764, 774-775 (9th Cir. 2008) (court did not abuse its discretion in converting Chapter 13 proceeding rather than allowing debtor to voluntarily dismiss). Here, there may be assets which can be administered, and there is the potential that additional assets have been concealed. Given Diane Erdmann's bad faith, and the potential existence of assets, conversion to Chapter 7 is warranted.

DATED this 9th day of May, 2019.

K&L GATES LLP

By /s/ *David C. Neu*
   Michael J. Gearin, WSBA #20982
   David C. Neu, WSBA #33143
   Brian T. Peterson, WSBA #42088
Attorneys for Mark Calvert, Chapter 11 Trustee of Northwest Territorial Mint, LLC

MOTION TO CONVERT CASE TO CHAPTER 7.- 7
502230972 v5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## CERTIFICATE OF SERVICE

The undersigned declares as follows:

That she is a paralegal in the law firm of K&L Gates LLP, and on May 9, 2019, she caused the foregoing document to be filed electronically through the CM/ECF system which caused Registered Participants to be served by electronic means, as fully reflected on the Notice of Electronic Filing.

Also on May 8, 2019, she caused the foregoing document to be placed in the mail to the Parties at the addresses listed below:

Diane Renee Erdmann
PO Box 4024
Federal Way, WA 98063

I declare under penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

Executed on the 9th day of May, 2019 at Seattle, Washington.

*/s/ Denise A. Lentz*
Denise A. Lentz

MOTION TO CONVERT CASE TO CHAPTER 7.- 8
502230972 v5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 19-41238-BDL    Doc 17    Filed 05/09/19    Ent. 05/09/19 13:06:23    Pg. 8 of 8